Mr. Ernest A. Sellers 105 North Ohio Avenue Live Oak, Florida 32064
Dear Mr. Sellers:
On behalf of the City of Live Oak, you ask substantially the following question:
Under what conditions may the city manager continue employment with the city after he has participated in the Deferred Retirement Option Program?
You state that the City of Live Oak revoked its election to participate in the Florida Retirement System (FRS) in 1995, but approximately 45 percent of the city's employees remain members. The city council recently voted to take steps to obtain coverage for its firefighters, police officers and all other employees not currently part of the system.
The present city administrator is a member of FRS and has entered the Deferred Retirement Option Program (DROP). His DROP termination date is June 30, 2003, but he wishes to continue his employment with the city beyond that date. You have been advised by the Division of Retirement that the administrator may retire and receive his DROP payment and be eligible for rehiring if he has a 31-day break in service and then reapplies for employment. There are several other conditions of such re-employment that will be discussed below. However, in deference to the jurisdiction of the Division of Retirement, this office concurs with the conclusions of that agency regarding this issue.
Section 121.091(13), Florida Statutes, establishes DROP, a program in which eligible members of FRS may defer receipt of retirement benefits while continuing to work for their FRS employer. The deferred monthly benefits accrue in the system's trust fund on behalf of the participant, with interest compounded monthly for the specified period of the DROP participation. Upon termination of employment, the participant receives the total DROP benefits and begins to receive the previously determined normal retirement benefits.
An eligible employee must make a written election to participate in DROP, selecting participation and termination dates, with the termination date contained in a binding letter of resignation.[1] Prior to an employee's receiving DROP benefits, the Division of Retirement must receive verification from the employer that the participant has terminated employment as prescribed in section 121.021(39), Florida Statutes, as follows:
 "a member electing to participate under the [DROP] occurs when the [DROP] participant ceases all employment relationships with employers under this system in accordance with s. 121.091(13), but in the event the [DROP] participant should be employed by any such employer within the next calendar month, termination will be deemed not to have occurred . . . ."[2]
 A DROP participant who fails to terminate employment as defined in section 121.021(39)(b), Florida Statutes, is deemed not to be retired and the DROP election is deemed to be null and void. Such employee's membership in the Florida Retirement System is reinstated retroactively to the date of commencement of the DROP and each employer with whom the employee continues employment is required to pay the system trust fund the difference between the DROP contributions paid under the law and the contributions required for the employee's class under the FRS for the period the employee participated in DROP, plus 6.5 percent interest compounded annually.[3]
Thus, the statutes governing participation in DROP require termination from employment, as that term is statutorily defined, in order for an employee participant to receive the lump sum payment. A participant in DROP may not return to work within the next calendar month following his or her retirement. For such purposes, the effective date of retirement occurs on the first day of the month in which benefit payments begin to accrue.[4] Moreover, a retiree who returns to work under the FRS after the appropriate lapse of time may not receive both a salary and retirement benefits for twelve months after his or her effective retirement date.[5] If a retiree returns to work, the Division of Retirement must be informed and retirement benefits will be suspended for the months of employment during the 12-month period.[6]
In the materials you have provided, concerns have been raised regarding the re-employment of the city manager in such a manner that while he would have the appropriate break in service, his continued employment would be assured through an informal agreement with the city council. The Division of Retirement has advised you that this may be considered to not constitute a true termination, such that the city manager and the city may be liable for repayment of DROP payments. Whether such an agreement for continued employment would be viewed as circumventing a true termination is a mixed question of law and fact that may not be answered by this office. Again, this office would defer to the opinion of the Division of Retirement and advise the city to heed such advice.
Accordingly, it is my opinion that in order for the city manager to be employed by the city after receiving a DROP payment, he must have terminated employment with the city and not be re-employed during the calendar month following his retirement. Moreover, it would be advisable for the city to comply with the direction of the Division of Retirement in its consideration of the city manager for re-employment to avoid potential liability for refunding improperly paid DROP benefits.
Sincerely,
Charlie Crist Attorney General
[1] Section 121.091(13)(b)2., Fla. Stat.
[2] Section 121.021(39)(b), Fla. Stat.
[3] Section 121.091(13)(c)5.d., Fla. Stat.
[4] Section 121.021(41), Fla. Stat.
[5] Section 121.091(9)(b)1., Fla. Stat.
[6] Section 121.091(9)(b)2., Fla. Stat.